Peaesost, J.
 

 In England, a deed of trust, which is not executed by the creditors, is looked upon as a conveyance made by the debtor for his own convenience in arranging his affairs, -which he may control or alter at any time, and revoke at his pleasure, and which, of course, is void against creditors who sue out execution,
 
 Walwyn
 
 v. Coutts, 3 Meriv. 707;
 
 Garrard
 
 v. Lauderdale, 3 Sim. 1, and upon appeal, 2 Russ. and Mylne 451.
 

 In this State, such deeds are looked upon in altogether a different light.
 
 After
 
 registration, theproperty is vested in the trustee, the trustor having no further control over it, or inter'est in it, except a resulting trust in the surplus after the debts are paid; the transfer is valid against creditors and subsequent purchasers, as being ■ made upon a valuable consideration ; in fact such a conveyance is treated as a mortgage — a third person, to wit, tire trustee being introduced, because, from experience, it is found to be expedient to have the legal
 
 *160
 
 title ill him, rather than in the creditor or his representatives, especially when the parties suppose it will he necessary to sell the property.
 
 Ingram
 
 v.
 
 Kirkpatrick
 
 6 Ire. Eq. 463.
 

 The deed' executed by McElroy, 22d September, 1854, is not a mere power of attorney, but is a valid conveyance, the legal effect of which, is to vest the property in Fries, in trust, to pay the large debt due the insurance company, and then in' trust to pay such other debts of McElroy as Fries
 
 “ may deem last a/nd find most convenient
 

 ■ The deed is drawn very loosely and inartificially, but-there is a consideration set out as being paid by Fries, to wit, $10 : this at once repels the idea of a mere power of attorney, which may be revoked the instant after it is made ; and there are apt and proper words of conveyance, so as to vest the fee simple and absolute estate in Fries in trust, &c.
 

 According to the decision in
 
 Ingram
 
 v.
 
 Kirkpatrick,
 
 this gave the insurance company an absolute right to have their debt paid out of the fund, because that debt is set out in the deed, and in regard to it, tlicro is an express declaration of trust. The other declaration of trusts is indefinite, and must depend on the rule
 
 id certum est quod cerium reddi potest:
 
 so that any debt which Fries either paid, or made a
 
 defimte promise
 
 to pay, at any time before the trustor himself made a, declaration of the debts which were to be paid out of this trust fund, and thereby made certain the indefinite words used, attached to the fund in the same way as if it liad been set out in the deed of trust. This, of course, will take in any debt due to Fries, or to a company in which he was a partner, for by the trust to pay such other debts as
 
 Fries may think lest a/nd find most
 
 convenient, 'the intention evidently was to include all debts due to Fries ; this implication, from the general motives and conduct of men, is nearly as strong, as if the debts had been set out in the deed.
 

 Our conclusion is, by the deed of 1848 the legal title to the property therein named vested in Fries, in trust, to pay the debts set out in that deed: by the deed of 1854 an estate in equity in the property conveyed by the deed of 1848, and
 
 *161
 
 the legal estate in the property not conveyed hy that deed is ■vested in Fries in trust to pay the debt due the Insurance Company, then in trust to pay debts due Fries, and then in trust to pay such debts as Fries had actually paid, or made a definite promise to pay before he had notice of the execution of the deed of 1855.
 

 By the deed of 1855, an estate in Equity is vested in the plaintiff Stimpson, of the surplus of the fund in the hands of Fries, in trust to pay the debts set out in that deed. The general power to act as the agent and attorney of McElroy, and to pay such debts as Fries “might deem best and find most convenient” was given in the deed of 1854, in consequence of the reliance which McElroy had in the financial skill and management of Fries, and possibly with an expectation that he would be able to make a composition or some favorable arrangement with the creditors, but in regard to this the rights of McElroy were not concluded, and he, as the owner of the ultimate estate, had a right at any time to interpose and direct that
 
 certain creditors
 
 should be paid, and this declaration of trust by McElroy, had the same legal effect as if these creditors had been named in the deed of 1854. So, the effect of the deed of 1855 is to revoke the general power given by the deed of 1854, or rather to control it by specific directions to pay certain creditors, and this we think McElroy had a right to do, provided he did not interfere with what Fries had done, or definitely promised to do. Such promises need not be in writing, for it does not come within the Statute of frauds as a promise to pay the debt of another; because Fries had the funds of the debtor in his hands, and the promise was made in reference to the fund, and not upon his individual respon
 
 sibilit
 
 y—Draughan v.
 
 Bunting,
 
 9 Ired. 10.
 

 The decree must declare the rights of the parties in pursuance of this opinion, and the plaintiffs may have a decretal order for an account, if it is moved for.
 

 Pee Curiam. Decree accordingly.